[Civ. No. 17398.   First Dist., Div. One.   Feb. 10, 1958.]

C. L. GRIFFIN et al., Respondents, v. COUNTY OF MARIN, Appellant.

W. O. Weissich, District Attorney, and Leland H. Jordan, Chief Civil Deputy, for Appellant.

Kennedy, Bloom, Fletcher & Burbank, Leonard J. Bloom and James M. Fletcher for Respondents.

PETERS, P. J.—The county of Marin appeals from a judgment in favor of C. L. and Etna L. Griffin, declaring an amendatory ordinance to the county zoning ordinance, insofar as it applies to the Griffins' property, to be "discriminatory, arbitrary, capricious, confiscatory and oppressive, and the same is unconstitutional, null and void, and constitutes an unreasonable exercise of police power on the part of defendant County of Marin," and holding that the Griffins were entitled to use their land in accordance with its original industrial zoning, and restoring to them their permit to construct a gasoline service station on the property.

On February 17, 1946, the respondents offered to purchase from its then owners the piece of real property here involved, which fronts on Tiburon Boulevard, a heavily traveled road in Marin County. The offer contained this provision: "this offer is conditional upon the above property being zoned for light highway business and said application being approved." On March 27, 1946, the Marin County Planning Commission, on application of the seller of the property, reclassified the property from a suburban agricultural district to a light industrial district, designated as M-1. On April 22, 1946, the Marin County Board of Supervisors amended the then zoning ordinance by reclassifying the property to an M-1 zone. Extensive property to the south of respondents' property was already classified as being in a light industrial district—M-1 —and had been used for a number of years as a lumber yard and planing mill. The property to the north was classified as being in a limited roadside business district.

Respondents completed the purchase of the property and, immediately thereafter, pursuant to permits issued by appellant, constructed on the northern portion of their property a furniture manufacturing and repair factory. In April of 1951, also pursuant to permit, a real estate office was constructed on the southeast corner of respondents' property.

The property immediately across the street from respondents' property was classified as suburban-agricultural. On July 28, 1953, the board of supervisors reclassified that property to a retail business district. The real estate office, above mentioned, was then moved to this property. On the same day other property across the street from respondents' property was reclassified from suburban-agricultural to light industrial. That property is used as a lumber storage yard for the lumber yard-planing mill above mentioned.

On December 4, 1953, respondents contracted to sell the southeast corner of their property to the Wests for $18,750 for use as a gasoline service station to be constructed and operated by the General Petroleum Corporation. On February 23, 1954, the State Division of Highways entered into a contract with the county of Marin which contemplated the construction of a cloverleaf where Tiburon Boulevard intersects Highway 101 and the widening of Tiburon Boulevard where it runs past respondents' property. This construction contemplated the condemnation of a portion of respondents' property.

On April 6, 1954, the county planning commission approved the plans submitted by the respondents for the construction of a gasoline service station on their property, but at the same meeting recommended that respondents' property be rezoned from light industrial, to first residential, that is, to one-family residential, and that the property north of respondents' property be reclassified from a limited roadside business district to a one-family residential district.

About two weeks later, that is, on April 21, 1954, the Marin County Building Inspection Department issued a building permit to respondents and to General Petroleum Corporation for the erection of the gasoline service station, and issued a utility permit for the installation of the necessary utilities. Prior to this date the respondents and General Petroleum had the property surveyed and also had prepared the plans and specifications for the gasoline service station. Immediately after securing the permits the permittees employed a contractor with a bulldozer who cleaned off the

surface of the ground and at one end of the property levelled off a high area. Then, on May 4, 1954, the board of supervisors passed a resolution of intention to rezone the property from light industrial to one-family residence, and, at the same meeting, instructed the county building inspector to revoke the building permit. Several weeks later, on May 25, 1954, the board reclassified respondents' property and the land north of respondents' property, as a one-family residence area. Respondents' permit was then revoked.

Experts called by respondents testified that the best and highest use of their property was for commercial and industrial use, and that the property was undesirable as residential property. One expert testified that as residential property it was worth but $8,500, while as industrial property it was worth over $50,000. Another fixed the residential value at $6,500 and the commercial or industrial value at $71,225. All of respondents' experts fixed the commercial value of the property far in excess of its residential value.

Shortly after the rezoning of the property to a one-family residence area the State of California filed a condemnation proceeding against respondents to condemn a portion of their property for highway purposes. As to this portion of the property sought to be condemned the only effect of the rezoning would be that if the rezoning is upheld the state would pay for the property at its residential instead of its commercial value. The state is not a party to this proceeding, but the county knew of the state's plans before it attempted to rezone the area. Obviously, as to the condemned property, the rezoning had no reasonable connection with the public health, safety or general welfare.

On this evidence the trial court found that the purported reasons for rezoning respondents' property were mere pretexts and without reference to the public health, safety or general welfare; that the rezoning deprives respondents of valuable property rights without justification; that the ordinance of May 25, 1954, as to respondents was discriminatory, confiscatory and unconstitutional. The court concluded that the property was still in a light industrial zone and that the revocation of the building permit was void and unconstitutional. Judgment was entered accordingly. The county of Marin appeals.

The parties argue many points in their briefs, most of them relating to the rulings of the trial court on the admissibility or exclusion of evidence. These rulings are all immaterial if

the finding that the rezoning ordinance was unconstitutional is supported by the evidence or by the law.

█ Under the evidence, the finding in question is amply supported. After the respondents and General Petroleum Corporation had changed their position in reliance on the then zoning ordinance and upon the issuance of the permit, performing a material amount of work thereunder, the respondents had a vested right in the permit, and the county had no legal right to revoke it.

In *Jones* v. *City of Los Angeles*, 211 Cal. 304 [295 P. 14], the property owner successfully enjoined a zoning ordinance that purported to abolish an existing use, the court holding that the classification in the ordinance was reasonable in prohibiting new businesses of the character involved, but was invalid insofar as it purported to affect existing lawful businesses. The court held that the police power, which is, of course, the basis for zoning ordinances, did not justify the destruction of existing businesses. In so holding the Supreme Court cited, relied upon, and quoted from the case of *Pelham View Apartments* v. *Switzer*, 130 Misc. 545 [224 N.Y.S. 56]. In that case a building permit for an apartment house was issued to respondent on October 6, 1926. On April 26, 1927, the city amended the zoning ordinance to prohibit the construction of apartment houses in the area. The permit was revoked. In the interim, in reliance on the permit, the respondent had completed the purchase of the property, employed an architect, had the property surveyed and started to excavate for the cellar. The court held that the revocation of the permit was invalid. In so holding, the court stated (p. 58 [224 N.Y.S.]):

"It was beyond the power of the common council to enact an ordinance to invalidate the permit issued and acted upon. It was likewise beyond the jurisdiction of the building inspector to revoke such permit, basing his revocation upon a subsequently enacted ordinance.

"Where a permit to build a building has been acted upon, and where the owner has, as in this instance, proceeded to incur obligations and to in good faith proceed to erect the building, such rights are then vested property rights, protected by the federal and state Constitutions. [Citing a case.] . . .

"While it is unfortunate that the erection of this apartment house may be distasteful to people living in the neighborhood, and while perhaps it is unfortunate that their property should

be thus affected, yet the protection of such rights must be legally done, and the public officials representing the people cannot legally be permitted to change the zoning law, and cancel a permit previously issued under the original zoning act, where an innocent purchaser of real estate has in good faith acted upon such official action of the city, and has thereby acquired vested rights under his permit.

". . . It would be nothing short of confiscation, and a complete disregard of constitutional rights, if a municipality could revoke a building permit issued under the conditions as presented in this case."

The Jones case, *supra,* after citing and quoting from many cases from various jurisdictions in support of these principles, concluded (211 Cal. at p. 321) as follows:

"Our conclusion is that where, as here, a retroactive ordinance causes substantial injury and the prohibited business is not a nuisance, the ordinance is to that extent an unreasonable and unjustifiable exercise of police power. . . .

"It follows that the present ordinance . . . is invalid in its application to these plaintiffs."

The rule of the Jones case has been consistently followed not only where existing uses are attempted to be abolished by a zoning ordinance, but also to the situation discussed by the *Pelham View Apartments* v. *Switzer* case, *supra,* namely, where a permit has been issued and work has been done under it in good faith before revocation. One of the leading cases is *Trans-Oceanic Oil Corp.* v. *City of Santa Barbara,* 85 Cal. App.2d 776 [194 P.2d 148]. There a municipality sought to revoke a permit to drill an oil well after the permittee had started preparatory work to drill the well in reliance on the permit. The court held this was an attempt to take private property without due process. In so holding the court stated (p. 783):

"It is not, nor could it be, claimed that a city council exercises unlimited discretion in the matter of revoking permits. A permit having issued, the power of a municipality to revoke it is limited. If the permittee does nothing beyond obtaining the permit or fails to comply with reasonable terms or conditions expressed in the permit granted, the proper authorities may revoke it. [Citations.] If a permittee has acquired a vested property right under a permit, the permit cannot be revoked. The principle is stated in 9 American Jurisprudence, section 8, page 204: 'By the weight of authority, a municipal building permit or license may not arbitrarily be

revoked by municipal authorities, particularly where, on the faith of it, the owner has incurred material expense. Such a permit has been declared to be more than a mere license revocable at the will of the licensor. When, in reliance thereon, work upon the building is actually commenced and liabilities are incurred for work and material, the owner acquires a vested property right to the protection of which he is entitled.' "

The court cited many authorities in support of this position, including the Pelham View Apartments case, *supra*. (See as particularly pertinent *Sandenburgh* v. *Michigamme Oil Co.,* 249 Mich. 372 [228 N.W. 707] ; *City of Buffalo* v. *Chadeayne,* 134 N.Y. 163 [31 N.E. 443].)

In *County of San Diego* v *McClurken,* 37 Cal.2d 683 [234 P.2d 972], the Supreme Court summarized the rule involved as follows (p. 691) :

"If an owner has legally undertaken the construction of a building before the effective date of a zoning ordinance, he may complete the building and use it for the purpose designed after the effective date of the ordinance. [Citing a Michigan and a New York case.] Protection of an undertaking involving the investment of capital, the purchase of equipment, and the employment of workers, is akin to protection of a nonconforming use existing at the time that zoning restrictions become effective. The same principle underlies the rule that a permittee who has expended substantial sums under a permit cannot be deprived by a subsequent zoning ordinance of the right to complete construction and to use the premises as authorized by the permit. [Citing the Trans-Oceanic Oil Corp. case, *supra,* and four out-of-state cases.]"

These cases are conclusive in the instant appeal. Just before the permit was issued on April 21, 1954, and in anticipation of its issuance, the respondents and General Petroleum had the property surveyed. Plans and specifications were drafted. Immediately after the permit was issued a contractor was employed to clean the surface and to level off the high places— all done in reliance on the permit. While the work on construction had not progressed to the extent it had in most of the cited cases, the work had progressed at a material cost to respondents. The trial court was justified in finding that these expenses had been incurred in good faith reliance on the permit and that respondents' rights had therefore vested.

Whether the work had progressed to a point sufficient to warrant the estoppel was a trial court question.

■ Appellant urges that it was error to admit evidence of the plans for the service station, for the reason that such plans were prepared by General Petroleum Corporation and not by respondents. But the evidence also shows that Mr. Griffin spent a considerable amount of time in consultation with General Petroleum Corporation's engineers and actually assisted in the preparation of the plans. The building permit ran to both respondents and General Petroleum Corporation. There was a valid outstanding contract with General Petroleum Corporation and the plans of the proposed building were obviously a link in the chain of evidence to establish that the rezoning was an invalid attempt to interfere with vested rights. There was no error in the admission of these plans.

Inasmuch as we are of the opinion that the judgment must be upheld on the ground that the revocation of the permit and the rezoning invalidly attempted to interfere with vested rights, none of the other points relating to the admission and exclusion of evidence raised by the parties need be discussed because none of these related to evidence on this basic ruling. Even if erroneous, and most of them were not, they could not affect the validity of the judgment.

■ The only other point necessary to discuss is appellant's contention that the trial court erred in excluding evidence relating to the defense of "unclean hands." The appellant attempted to show that when respondents purchased the property in question in 1946, and when the board of supervisors rezoned it so as to make it a part of a light industrial zone, respondents represented to the board that they intended to use the property for a woodworking furniture shop and that they would reside on the premises and would use it for no other purpose. Appellant urges that to now try to change the nature of the use is bad faith and amounts to coming into court with unclean hands. The evidence was properly excluded. The county cannot, at this late date, impeach the unambiguous terms of its own zoning ordinance by parol evidence of the intentions of the members of the board when they passed it. (*Childress* v. *Peterson,* 18 Cal.2d 636 [117 P.2d 336]; *Estate of Sloan,* 7 Cal.App.2d 319 [46 P.2d 1007].)

The trial court correctly held that it could not permit evidence to be introduced contrary to the clear wording of the ordinance classifying the respondents' property as light industrial. ■ The police power to zone property may not

be limited by private agreement. (*Acker* v. *Baldwin,* 18 Cal. 2d 341 [115 P.2d 455].) Nor can the board properly show that the ordinance was conditioned upon a secret agreement with the property owner. Such an agreement would be illegal and against public policy. (*Houston Petroleum Co.* v. *Automotive Products Credit Assn.,* 9 N.J. 122 [87 A.2d 319].) Recognition of the defense of unclean hands under such circumstances would result in the enforcement of an illegal agreement. For these reasons the evidence was properly excluded.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.