[Civ. No. 1681. Fifth Dist. Oct. 25, 1973.]

WILLIAM H. PETTITT et al., Plaintiffs and Respondents, v.
CITY OF FRESNO et al., Defendants and Appellants.

Spencer Thomas, Jr., City Attorney, Alan D. Davidson, Assistant City Attorney, A. Grant Macomber, James A. McKelvey, Norton O. Nishioka and John N. Kopsinis, Deputy City Attorneys, for Defendants and Appellants.

Leonard C. Hoar, Jr., for Plaintiffs and Respondents.

## OPINION

**BROWN (G. A.), P. J.**—The principal question in this case is whether a municipality can be estopped to deny the validity of a building permit issued in violation of a zoning ordinance.

In 1963 William H. Pettitt and Loretta P. Pettitt, his wife (hereinafter "Pettitts"), were contemplating the purchase of the premises at 3115-3117 North Wilson Street, Fresno, for the purpose of converting the existing building on the property into a beauty salon. The single-story building was divided into two parts with separate entrances and addresses on the west side of Wilson. 3115 North Wilson had approximately 560 square feet and was an apartment and 3117 North Wilson had approximately 1,200 square feet and was a vacant bread store.

The area in which the building is located was zoned for single-family residences. However, since the building existed at the time the zoning ordinance was adopted, 3115 had a permitted nonconforming use of multiple residential, and 3117 of retail commercial uses, both of which nonconforming uses would not terminate until June 11, 1980.

On December 16, 1963, pursuant to request, a letter was sent from the Planning Department of the City of Fresno (hereinafter the "City") to the realtors with whom the Pettitts were corresponding for the purchase of the building.[1] Shortly thereafter the Pettitts purchased the property.

On August 17, 1964, the Pettitts made application to the City for and received a building permit. On the application the Pettitts put "3115 No. Wilson, 3117 No. Wilson." In the space provided for the description of the use of the building, the Pettitts inserted "Beauty Salon," thus indicating that the use at both 3115 and 3117 was to be a beauty salon. In the space provided for the description of the work to be done, they inserted the word "Alterations." They stated that the value of the work to be done was $5,000. At the time the permit was issued, notations were made on it by

---

[1]The letter reads as follows:

"Subject: 3117 North Wilson Ave.

"Dear Mrs. Speegle

"This is to advise that the property at 3117 No. Wilson Avenue has a nonconforming right of use for C-1 retail commercial uses. This right of occupancy exists in that the subject building has been continuously occupied with limited retail commercial uses since prior to the adoption of the present zoning regulations.

"This commercial occupancy may continue to exist on this property provided it is not vacated for a continuous period of one year or changed to a conforming use.

"Please be further advised that there is an amortization period for the ultimate removal of this nonconforming building from the property. This building being of Type V construction as set forth in the Uniform Building Code, must be removed from the premises within twenty (20) years from the date the said building became nonconforming which in this case, was June 11, 1960.

"We hope that this information provides you with the present zoning status of this property. If you have any questions or comments concerning this matter please feel free to contact this office."

the zoning administrator of the City that it was "F-2" occupancy and that "This building is a non-conforming use." F-2 occupancy signifies that a retail-commercial occupancy is permitted.

Upon issuance of the building permit, the Pettitts commenced work on the building; they moved the door which fronted on 3115 North Wilson to the south wall of the building, remodeled the roof and outer walls, and made certain electrical changes in both the 3115 and 3117 portions of the building. Additionally, they covered with wallboard a door which had connected the interior of the two portions of the building. By late 1964 the Pettitts had exhausted their funds and were unable to finish the work planned for the 3115 portion of the building.

On February 5, 1965, the Pettitts, upon making an $85 deposit, received a temporary certificate of occupancy, and after the city's building and electrical inspectors approved of the work which had been completed a refund of the $85 deposit was made to them and a notation was entered: "Job at 3115-17 N. Wilson completed." Thereupon, Pettitts commenced using the 3117 portion of the building as a beauty salon and the 3115 portion for storage in connection with the beauty salon operation. The trial court found that both of these uses were an integral part of the beauty salon operation.

In late 1965, without seeking or obtaining a new building permit, the Pettitts completed their planned redecoration of the interior of the 3115 portion of the building, removed the temporary wallboard which they had placed over the door dividing the two portions of the building, and commenced using the 3115 portion of the building for hair dryers.

In completing the total project the Pettitts expended $12,800 for materials and $8,000 in labor.

On May 11, 1967, a building inspector noted the work which had been done in late 1965 on 3115 North Wilson without a building permit and gave the Pettitts five days to obtain one. Between that date and January 6, 1969, the Pettitts exhausted, without success, all of their administrative remedies before the city director of planning, the zoning appeals committee, planning commission and the city council to obtain a variance under the zoning laws on 3115 North Wilson to permit its use as a beauty shop.

Thereupon they filed this petition for writ of mandate in the court below, and after a trial without a jury the court ordered the City to refrain from revoking and to honor the building permit issued on August 17, 1964, and

to refrain from interfering with Pettitts' use of 3115 as a beauty salon. The City has appealed.

In its findings of fact and conclusions of law the court in substance found and concluded that the Pettitts purchased the property in reliance upon the City's representation that both 3115 and 3117 North Wilson had a nonconforming right of use of C-1 retail commercial and that they would not have purchased the property except for such assurances; that the Pettitts reasonably relied, to their detriment, upon the issuance of the building permit for the use of 3115-3117 North Wilson as a beauty salon and spent substantial sums in reliance thereon. and that the City is "estopped from denying petitioners the right to use the entire building at 3115-3117 N. Wilson as a beauty salon, and that respondents [City] are legally precluded from revoking or modifying the rights granted under the building permit, . . ."

Upon this appeal the City has spent considerable effort to reargue the facts before this court. That effort must fail. We have reviewed the evidence and are satisfied that the court's findings are supported by substantial evidence; at that point our inquiry on this phase of the matter must end. As was said in *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, at pages 925-926 [101 Cal.Rptr. 568, 496 P.2d 480]: "In resolving the issue of the sufficiency of the evidence, we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment [citation]. All issues of credibility are likewise within the province of the trier of fact. [Citation.] 'In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing.*' (6 Witkin, Cal. Procedure, . . . § 249, at p. 4241.) All conflicts, therefore, must be resolved in favor of the respondent. [Citation.]" (See *Continental Dairy Equip. Co.* v. *Lawrence* (1971) 17 Cal. App.3d 378, 382 [94 Cal.Rptr. 887].)

The existence of an estoppel is generally a question of fact for the trial judge, whose determination on the factual question is conclusive on appeal. (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].) It would serve no useful purpose to unduly lengthen this opinion by particularizing the evidence in detail which is supportive of the factual conclusions.

The City urges as one ground for reversal that the original permit dated August 17, 1964, expired[2] long before the work on 3115 was restarted in

[2]Section 302, subdivision (d) of the Uniform Building Code, then in force in the City of Fresno, provided in part that: "Every permit issued by the building official

late 1965 or early 1966 to change it from a beauty salon storage room to an area for hair dryers. Factually, it does appear that the expiration of the permit is undeniable; the trial court made no contrary finding. The court, however, specifically did not pass upon the legal effect of the failure to obtain a new permit because its holding that the City is estopped to deny the validity of the permit rendered it unnecessary to pass upon that question.[3] We likewise find it unnecessary to reach the point because of our conclusion that as a matter of law the City cannot be estopped to deny the validity of a permit or other representations respecting the use of property issued or made in violation of the express provisions of a zoning ordinance. We now pass to a discussion of that legal question.

It is indisputable that the letter of December 16, 1963, and the building permit issued on August 17, 1964, insofar as they authorize the use of 3115 North Wilson for a C-1 retail-commercial use, were in violation of the then existing zoning ordinance of the City.[4]

 It is now well recognized that in unusual cases estoppel may be applied against the government: "It is settled that '[t]he doctrine of equitable estoppel may be applied against the government where justice and right require it. [Citation.]' [Citations.] Correlative to this general rule, however, is the well-established proposition that an estoppel will not be applied against the government if to do so would effectively nullify 'a strong rule of policy, adopted for the benefit of the public, . . .' [Citation.] The tension between these twin principles makes up the doctrinal context in which concrete cases are decided." (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 493 [91 Cal.Rptr. 23, 476 P.2d 423].)

The court in *Mansell* then proceeded to quote from *City of Imperial Beach* v. *Algert* (1962) 200 Cal.App.2d 48, 52 [19 Cal.Rptr. 144], in illustrating the doctrinal tension referred to: "The court said: 'The courts

under the provisions of this code shall expire by limitation and shall become null and void, if the building or work authorized by such permit is not commenced within 60 days from the date of such permit, or if the building or work authorized by such permit is suspended or abandoned at any time after the work is commenced for a period of 120 days. Before such work can be recommenced a new permit shall be first obtained. . . ."

[3]"The interior redecorating of 3115 was done by petitioners without seeking a new building permit under the bona fide belief that no such permit was required. Whether the work done was such as to legally require a permit is not material in view of the ultimate holding that there is an estoppel in this case." (Finding No. 8.)

[4]The Fresno Municipal Code prohibits the expansion of a nonconforming use into any other portion of a conforming building or structure, and further provides that a residential use (such as the apartment) may not be converted to a commercial use (beauty salon). See Fresno Municipal Code section 12-317(B) (formerly § 12-406(B)).

of this state have been careful to apply the rules of estoppel against a public agency only in those special cases where the interests of justice clearly require it. [Citations.] However, if such exceptional case does arise and if the ends of justice clearly demand it, estoppel can and will be applied even against a public agency. Of course, the facts upon which such an estoppel must rest go beyond the ordinary principles of estoppel and each case must be examined carefully and rigidly to be sure that a precedent is not established through which, by favoritism or otherwise, the public interest may be mulcted or public policy defeated.' [Citation.]" (3 Cal.3d at p. 495, fn. 30.)

■ The court in *Mansell* then concludes: "For this reason the same contrast provides an apt background against which to state a broad and comprehensive standard governing the mutual accommodation of those principles in concrete cases. After a thorough review of the many California decisions in this area, as well as a consideration of various out-of-state decisions, we have concluded that the proper rule governing equitable estoppel against the government is the following: The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (3 Cal.3d at pp. 496-497.)

■ In the area of permits and zoning laws, we do not write on a clean slate. The balancing process between the avoidance of manifest injustice to the individual and the preservation of the public interest has already been undertaken in the factual context of the case at bench, and in this situation the courts have expressly or by necessary implication consistently concluded that the public and community interest in preserving the community patterns established by zoning laws outweighs the injustice that may be incurred by the individual in relying upon an *invalid* permit to build issued in violation of zoning laws.

In *Magruder* v. *City of Redwood* (1928) 203 Cal. 665 [265 P. 806], the plaintiff had erected and used a lumber yard and hardware store buildings in a district zoned as residential, contrary to the provisions of the city zoning ordinance. The city instituted criminal proceedings against him, and the plaintiff sought an injunction against such proceedings on the grounds that he had obtained building permits to erect both buildings and thus the city was estopped to enforce the ordinance against him. The court instructed at pages 674-675: "That matter, therefore, is resolved down to

the question whether the board of trustees by granting a permit to erect the second building, knowing at the time it was to be used as a hardware store, which use was contrary to the terms of the ordinance, thereby placed themselves in a position that prevented them from thereafter enforcing the terms of the ordinance which prohibited a lumber-yard from being operated within the residence district. Appellant contends that they have. He cites no authority to support his contention, and we are not seriously impressed with it. We know of no power possessed by a board of trustees that will permit it in any such manner to nullify a legal ordinance adopted by the municipality. An ordinance of a municipality when once legally adopted becomes binding upon all the citizens thereof, officers as well as private citizens, and it is the sworn duty of those officers, charged with its enforcement, to prosecute all violations thereof. This duty is not a personal duty that can be waived at their will, nor can they be estopped by any action of theirs from the faithful performance of the same. There is no merit in this contention of appellant."

In *Millbrae Assn. for Residential Survival* v. *City of Millbrae* (1968) 262 Cal.App.2d 222 [69 Cal.Rptr. 251], the court held that a developer who had spent in excess of $600,000 in developing property pursuant to invalid permits issued in violation of a city zoning ordinance had no vested rights and he could not rely upon the estoppel cases wherein the expenditures were made pursuant to *valid* permits. For example, see *Jones* v. *City of Los Angeles* (1930) 211 Cal. 304, 310-313 [295 P. 14]; *Griffin* v. *County of Marin* (1958) 157 Cal.App.2d 507, 511-513 [321 P.2d 148]; *Anderson* v. *City Council* (1964) 229 Cal.App.2d 79, 89 [40 Cal.Rptr. 41].

In *Markey* v. *Danville Warehouse & Lbr., Inc.* (1953) 119 Cal.App.2d 1 [257 P.2d 19], the defendant erected and commenced use of a concrete plant pursuant to use and building permits granted by appropriate public officials. Subsequently, the defendants' operations were enjoined as being violative of the applicable county zoning ordinance. On appeal, the defendants contended in part that by virtue of the issuance of the land use and building permits they had acquired a vested right to use the property and that the doctrine of estoppel applied so as to preclude interference with their use of the premises. The court disagreed, holding that the use and building permits issued in contravention of the ordinance were of no force or effect and thus the defendants did not acquire a vested right to continue to so use the property. The court stated: "The ordinance gives the board of supervisors power to grant land use permits for enumerated purposes only among which a concrete mixing plant in a general commercial district is

not included. The board has then no power to grant such permit until the ordinance is amended through proper legislative procedure. (*Johnston* v. *Board of Supervisors,* 31 Cal.2d 66, 74 [187 P.2d 686].) Even an express permit granted by the board contrary to the terms of the ordinance would be of no effect (*Johnston* v. *Board of Supervisors, supra; Magruder* v. *City of Redwood,* 203 Cal. 665, 674-675 [265 P. 806]). Not only was there no amendment of the ordinance but the application is without any importance for the matter before us because neither its terms nor the plan accompanying it show in any way the different industrial use intended to be made of the premises. This new use was known when the building permit was granted, but the acts of the administrative and legal functionaries involved can certainly no more influence the force of the ordinance or cause a vested right in appellants or an estoppel than an invalid permit of the board of supervisors itself. [Citations.]" (119 Cal.App.2d at pp. 6-7.)

Similarly, in *In re Application of Ruppe* (1927) 80 Cal.App. 629 [252 P. 746], the petitioners had obtained a building permit and erected an undertaking establishment in a residential zone, contrary to the provisions of the Los Angeles city zoning ordinance. They were convicted and imprisoned for violating the zoning ordinance and brought a writ of habeas corpus seeking their discharge. They contended in part that since they had secured a building permit and expended some $35,000 in erecting the building, the city had impliedly acquiesced in their use of the building and therefore could not later assert the violation and to permit them to do so was equivalent to a confiscation of their property. The court disagreed, holding that the building department which issued the permit had authority to do no more than sanction the erection of the building and could not thereby sanction petitioners' intended use of the building in violation of the zoning ordinance.

Fundamentally, the principle enunciated in these cases finds its base in the thesis that estoppel will not be invoked against a government agency where it would defeat the effective operation of a policy adopted to protect the public.

In the field of zoning laws,[5] we are dealing with a vital public interest— not one that is strictly between the municipality and the individual litigant.

---

[5]The rule has also been invoked, recognized and approved in many California cases other than zoning where the public interest is vitally involved and outweighs the private injury. Exemplifying such decisions are: *Western Surgical Supply Co.* v. *Affleck* (1952) 110 Cal.App.2d 388, 392-393 [242 P.2d 929]—board or official has no power to waive or consent to violation of the Health and Safety Code and Business and Professions Code penal provisions; *Miller* v. *McKinnon* (1942) 20 Cal.2d 83,

All the residents of the community have a protectable property and personal interest in maintaining the character of the area as established by comprehensive and carefully considered zoning plans in order to promote the orderly physical development of the district and the city and to prevent the property of one person from being damaged by the use of neighboring property in a manner not compatible with the general location of the two parcels. (*Neuber* v. *Royal Realty Co.* (1948) 86 Cal.App.2d 596, 620 [195 P.2d 501].) These protectable interests further manifest themselves in the preservation of land values, in esthetic considerations and in the desire to increase safety by lowering traffic volume. To hold that the City can be estopped would not punish the City but it would assuredly injure the area residents, who in no way can be held responsible for the City's mistake. Thus, permitting the violation to continue gives no consideration to the interest of the public in the area nor to the strong public policy in favor of eliminating nonconforming uses and against expansion of such uses. (*Paramount Rock Co.* v. *County of San Diego* (1960) 180 Cal.App.2d 217, 228-229 [4 Cal.Rptr. 317]; *Rehfeld* v. *City and County of San Francisco* (1933) 218 Cal. 83 [21 P.2d 419].)

The City has suggested in its brief that the proper course would be to relegate the Pettitts to an action for damages. We do not pass upon that question because it is not before us.[6]

Cases cited by the Pettitts in support of their estoppel theory are readily distinguishable: *Spindler Realty Corp.* v. *Monning* (1966) 243 Cal.App.2d 255 [53 Cal.Rptr. 7]; *Trans-Oceanic Oil Corp.* v. *Santa Barbara* (1948) 85 Cal.App.2d 776 [194 P.2d 148]; *Kissinger* v. *City of Los Angeles* (1958) 161 Cal.App.2d 454 [327 P.2d 10]; *County of San Diego* v. *McClurken* (1951) 37 Cal.2d 683 [234 P.2d 972]; *Jones* v. *City of Los Angeles* (1930)

90-91 [124 P.2d 34, 140 A.L.R. 570]—statutory requirement that contracts by public agency be let only by competitive bidding is mandatory, a contract let in violation thereof is void and the agency cannot be estopped to assert such invalidity; *Joseph George, Distr.* v. *Dept. Alc. Control* (1957) 149 Cal.App.2d 702, 713 [308 P.2d 773] —estoppel cannot be invoked to defeat the revocation of a liquor license as that would frustrate the public policy of the law (see also *Martin* v. *Alcoholic Bev. etc. Appeals Bd.* (1959) 52 Cal.2d 287, 292 [341 P.2d 296]); *Caminetti* v. *State Mut. Life Ins. Co.* (1942) 52 Cal.App.2d 321, 325-326 [126 P.2d 165]—insurance commissioner cannot be estopped from taking over an insurance company when its poor financial condition justifies such action (see also *County of San Diego* v. *Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 826-827 [186 P.2d 124, 175 A.L.R. 747]).

[6]Government Code section 818.4 may preclude such an action. It provides: "A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

211 Cal. 304 [295 P. 14]; *Griffin* v. *County of Marin* (1958) 157 Cal. App.2d 507 [321 P.2d 148]; and *Pelham View Apartments* v. *Switzer* (1927) 130 Misc. 545 [224 N.Y.S. 56]. The facts in each of these cases show that the building permit was a *valid* permit when issued, and in reliance thereon the permittee acted to his detriment; the court stated the principle that the agency could not thereafter revoke the permit or change the zoning, being barred by the doctrine of estoppel from doing so. It is, of course, a wholly different situation when the permit is *invalid* from the beginning because issued in violation of the zoning law for the area.

The judgment is reversed. The parties shall bear their own costs on appeal.

Gargano, J., and Thompson, J.,* concurred.

A petition for a rehearing was denied November 19, 1973, and the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied January 3, 1974.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.