Filed 5/8/13  Beglari v. City of Los Angeles CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MEHR Z. BEGLARI et al., | B238950 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC443090) |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Ramona G. See, Judge.  Affirmed.

The Law Offices of Abdulaziz, Grossbart & Rudman and Bruce D. Rudman for Plaintiffs and Appellants.

Carmen A. Trutanich, City Attorney, Terry P. Kaufmann Macias and Amy Brothers, Deputy City Attorneys for Defendant and Respondent.

Plaintiffs and appellants Mehr Z. Beglari and Vickey M. Beglari, individually and as trustees of the Beglari Family Trust (collectively, plaintiffs) appeal from the judgment entered in favor of the City of Los Angeles (the City) after the trial court sustained, without leave to amend, the City's demurrer to plaintiffs' second amended complaint. We affirm the judgment.

## BACKGROUND

This case concerns the City's issuance and subsequent revocation of building permits to remodel an existing home in the Rustic Canyon area of Pacific Palisades. When applying for those permits, plaintiffs erroneously calculated the required front yard setback. As a result, they obtained approval to construct an addition to their house, now completed, that is 14 feet closer to the street than permitted by the governing sections of the Los Angeles Municipal Code.

The invalid building permits and the nonconforming house built pursuant to those permits have been the subject of litigation for the past 12 years. In 2003, a writ of mandate was issued requiring the City to revoke the permits. The writ was affirmed by Division One of this court in *Horwitz v. City of Angeles* (2004) 124 Cal.App.4th 1344 (*Horwitz I*). The City subsequently reissued the revoked permits, resulting in an order to enforce the writ. We affirmed that order in a nonpublished opinion. (*Horwitz v. City of Los Angeles* (Apr. 2, 2009, B204545) (*Horwitz II*).) The facts concerning the issuance and revocation of the permits are set forth in *Horwitz I* and *Horwitz II*. We restate the relevant facts as necessary.

### Horwitz I

In 2000, plaintiffs submitted permit applications to the City to obtain approval for an addition to their home at 909 Greentree Road. (*Horwitz I, supra*, 124 Cal.App.4th at p. 1347.) In their permit applications, plaintiffs miscalculated the prevailing front yard setback, and the City accepted those miscalculations as the basis for issuing the building permits. As a result, plaintiffs obtained approval to build an expanded structure 14 feet closer to the street than permitted under the municipal code. (*Ibid.*)

2

While construction on plaintiffs' property was underway, neighbors objected, challenging the permits first through informal contacts with the City and then through the administrative appeal process. (*Horwitz I, supra*, 124 Cal.App.4th at p. 1347, fn. 1.) At some point before or during the administrative appeal process, the City stopped plaintiffs' construction for approximately three weeks while it investigated the neighbors' complaints. Based on its investigation, the City concluded plaintiffs' construction was in compliance with the prevailing front yard setback and allowed the construction to proceed.

In April 2002, while their administrative appeal was still pending, the neighbors sued the City and plaintiffs as the real parties in interest for declaratory and injunctive relief, seeking to compel the City to revoke the building permits and to issue a stop work order. The superior court refused to issue a preliminary injunction on the ground that administrative remedies had not been exhausted and because construction of plaintiffs' home was by then almost complete. (*Horwitz I, supra*, 124 Cal.App.4th at p. 1348.)

The neighbors were unsuccessful in obtaining relief through the administrative appeals process, and in March 2003 they filed a petition for administrative mandamus. (*Horwitz I, supra*, 124 Cal.App.4th at p. 1353.) After a hearing on the writ petition, the superior court concluded that the permits were improperly issued to plaintiffs, based on their erroneous calculation of the prevailing front yard setback, and must be revoked. (*Id.* at pp. 1355-1356.) Plaintiffs and the City appealed that ruling, and Division One of this court affirmed the writ. (*Ibid.*)

**Horwitz II**

After the writ was issued, plaintiffs' neighbors made repeated efforts to get the City to take action to enforce the writ. The City initially revoked the permits and issued an order to comply. Plaintiffs then acquired another property located at 921 Greentree Road and filed an application for a permit to attach a canopy to an outdoor fireplace at that property. On the same day that the City issued a permit for the canopy, plaintiffs applied for reinstatement of the previously revoked permits for 909 Greentree Road.

3

Plaintiffs' application for reinstatement of the revoked permits stated that although no physical changes had been made to the existing building, reinstatement was justified because of changed circumstances. The only change that had occurred since issuance of the writ, however, was the construction of the canopy at 921 Greentree Road. Plaintiffs claimed the canopy changed the prevailing setback calculation for all structures on the block, including their residence at 909 Greentree Road. Based on plaintiffs' claim of changed circumstances, the City reinstated the building permits and certificate of occupancy that were the subject of the writ, relying on an exception to the front yard setback requirement, referred to as the projecting building exception, codified at Los Angeles Municipal Code section 12.22C5. (*Horwitz II, supra*, at pp. 3-4.)

When plaintiffs' neighbors learned that the City had reinstated the revoked permits, they filed an application for an order to show cause re contempt for failure to comply with the writ of mandate. The trial court issued the OSC against the City. All parties then entered into a settlement agreement in which they agreed to submit to a judicial hearing on the validity of the projecting building exception and the City's reinstatement of the permits based on that exception. (*Horwitz II, supra*, at p. 4.)

At the ensuing judicial hearing, the neighbors and the City presented documentary evidence, stipulated facts, and the testimony of several witnesses. Plaintiffs refused to participate. At the conclusion of the hearing, the superior court found that the City had improperly applied the projecting building exception in determining the prevailing setback requirement, ordered the City to comply with the setback requirements, and prohibited the City from reinstating or issuing permits for 909 Greentree Road unless and until plaintiffs took lawful measures to bring the property into compliance with the municipal code. (*Horwitz II, supra*, at p. 6.) We affirmed the orders enforcing the writ. (*Id.* at p. 13.)

**The instant appeal**

In August 2012, plaintiffs filed this action for inverse condemnation, inverse condemnation by judicial action, and violation of civil rights under section 1983 of title

4

42 of the United States Code (section 1983). Plaintiffs filed a first amended complaint in response to a demurrer filed by the City, and a second amended complaint after the trial court sustained, with leave to amend, the City's demurrer to the first amended complaint. The City again demurred to the second amended complaint and requested that the trial court take judicial notice of *Horwitz I*. The trial court granted that request and sustained the demurrer without leave to amend.

The trial court concluded that plaintiffs failed to state a cause of action for inverse condemnation because they did not allege facts showing that they have a legitimate property interest at stake. As support for this conclusion, the trial court cited the court's finding in *Horwitz I* that "nonconforming permits" were issued in response to plaintiffs' "substantially erroneous applications" (*Horwtiz I, supra*, 124 Cal.App.4th at p. 1356, fn. omitted), and *Millbrae Assoc. for Residential Survival v. Millbrae* (1968) 262 Cal.App.2d 222, 246 (*Millbrae*) [no property right in invalid building permit]. The trial court further concluded that plaintiffs' claim for inverse condemnation by judicial taking failed because it was barred by the doctrine of collateral estoppel and because plaintiffs alleged no facts showing that the City was liable for a taking by the judicial branch. The court similarly determined that collateral estoppel barred plaintiffs' cause of action for deprivation of civil rights and that the claim failed for the additional reason that plaintiffs alleged no facts showing that they had a vested property right.

Judgment was subsequently entered in the City's favor and this appeal followed.

## DISCUSSION

### I. Standard of review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]'

5

[Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.) The legal sufficiency of the complaint is reviewed de novo. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790.)

## II. Inverse condemnation

To state a cause of action for inverse condemnation, a landowner must allege ownership of a valuable property right, taking of property by a governmental entity, and damage to property rights substantially caused by the governmental entity's conduct. (*Stoney Creek Orchards v. State of California* (1970) 12 Cal.App.3d 903, 906-907.)

In their second amended complaint, plaintiffs allege that their reliance on the building permits issued by the City created a "vested right" in their completed home at 909 Greentree Road, and that the City's revocation of the permits was a taking of property in violation of the California and federal Constitutions. These allegations fail to state a cause of action for inverse condemnation because plaintiffs cannot claim to have a legitimate property interest in the building permits or in the home built pursuant to those permits, as neither conforms to the mandatory requirements of the City's zoning code. Plaintiffs' inverse condemnation claims also fail because the City's revocation of the permits did not constitute a taking.

### A. *No legitimate property interest*

Plaintiffs do not have a legitimate property interest in the invalidated building permits or in the home built pursuant to those permits. The court in *Horwitz I* determined that the building permits were invalid and the home built pursuant to those permits was in violation of the City's mandatory zoning ordinance. That determination precludes plaintiffs from claiming a vested property interest in the building permits and in their nonconforming home under the doctrine of collateral estoppel. Collateral estoppel, or

6

issue preclusion, precludes relitigation of an issue identical to that argued and decided in a prior proceeding. (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.)

Plaintiffs argue that collateral estoppel does not bar their inverse condemnation claim because the issues that were decided in *Horwitz I* are not identical to the issues presented here. Their argument over-simplifies the collateral estoppel analysis. Under the doctrine of collateral estoppel "[t]he 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same. [Citation.]" (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342.)

Here, the factual allegations upon which plaintiffs' claims are premised are identical to those upon which the court's ruling in *Horwitz I* was based. Plaintiffs' inverse condemnation claim is premised on the alleged right to build their home in accordance with the building permits issued by the City. That same right was at stake in *Horwitz I*, in which the court concluded the permits were invalid because the City lacked authority to issue permits for construction that did not conform to the mandatory requirements of the City's zoning ordinance. (*Horwitz I, supra*, 124 Cal.App.4th at p. 1356.) The court in *Horwitz I* further concluded that plaintiffs' house, built in violation of the municipal code, "must conform to the mandatory requirements of the zoning ordinance." (*Id.* at p. 1355.) Given the court's ruling in *Horwitz I*, plaintiffs cannot claim to have a legitimate property right in either the building permits or the home because neither complies with the applicable zoning requirements.

Plaintiffs cite *Anderson v. City of La Mesa* (1981) 118 Cal.App.3d 657 (*Anderson*) as support for their argument that construction of their home in reliance on the building permits created a vested right in the completed home. In *Anderson*, the court found that a homeowner's construction of her home in good faith reliance on a building permit issued by the city conferred a vested property right in the completed home. (*Id.* at pp. 660-661.) *Anderson*, however, is distinguishable from the instant case in several significant respects.

7

*Anderson* concerned a homeowner's petition for writ of mandate -- the procedural posture of plaintiffs' previous case in *Horwitz I*. Significantly, the building permit issued to the homeowner in *Anderson* complied with a city zoning ordinance requiring homes to be set back at least five feet from the side lot line. As allowed under both the permit and the ordinance, the homeowner built the house seven feet from the side lot line. (*Anderson, supra*, 118 Cal.App.3d at p. 659.) The city inspected the house several times during construction, but refused to issue a final certificate of occupancy upon completion, citing a specific plan ordinance requiring the house to be set back at least 10 feet from the side lot line. (*Ibid.*) The court in *Anderson* affirmed an order requiring the city to issue a variance and an occupancy permit, concluding the city was equitably estopped from enforcing the 10-foot setback requirement because the house built in accordance with the permit did not violate the city's standard zoning ordinances, and because there was no evidence that granting a variance would cause any hardship on any other persons. (*Id.* at p. 661.)

In contrast, the building permits in the instant case were issued in violation of the City's zoning ordinance. (*Horwitz I, supra*, 124 Cal.App.4th at p. 1356.) That violation, resulting in a 14-foot encroachment by plaintiffs' home into the setback area, was caused by plaintiffs' erroneous calculation of the setback when submitting their permit applications. (*Id.* at pp. 1347, 1349, 1355, fn. 5.) Because plaintiffs' mistake resulted in the issuance of the nonconforming permits, the court in *Horwitz I* concluded that plaintiffs rather than their neighbors should bear the burden of that mistake and ordered the City to revoke the building permits and certificate of occupancy issued in violation of the zoning code. (*Id.* at pp. 1355, fn. 5; 1356.)

*Anderson* is thus distinguishable from the instant case, and we are not persuaded by plaintiffs' argument that it compels a different result. There is ample case authority to support the conclusion that plaintiffs had no property right to build their home in violation of the City's zoning code. (*Golden Gate Water Ski Club v. County of Contra Costa* (2008) 165 Cal.App.4th 249, 267 (*Golden Gate*) [landowner never had a property

8

right to develop land in violation of county land use requirements]; see also *Pettitt v. City of Fresno* (1973) 34 Cal.App.3d 813, 824 (*Pettitt*) [no vested right in building permit invalid at issuance because it was in violation of existing zoning law]; *Millbrae, supra*, 262 Cal.App.2d at p. 246 [no vested property right in permit which was invalid when issued because it violated the zoning ordinance].)

Plaintiffs failed to allege facts demonstrating that they had a legitimate property interest in the building permits issued in violation of the City's zoning code or in the nonconforming home built pursuant to those permits. The trial court accordingly did not err by sustaining the demurrer to the cause of action for inverse condemnation.

### B. *No taking by the City*

An independent basis for sustaining the demurrer to plaintiffs' inverse condemnation claims is that the second amended complaint fails to allege facts sufficient to support the conclusion that the City's revocation of the permits resulted in a taking. """Regulations regarding and restrictions upon the use of property in an exercise of the police power for an authorized purpose, do not constitute the taking of property without compensation or give rise to constitutional cause for complaint."' [Citation.]" (*West Washington Properties, LLC v. Department of Transportation* (2012) 210 Cal.App.4th 1136, 1150 (*West Washington*).)

Whether a claimant who has unsuccessfully opposed a governmental abatement action in a mandamus proceeding may still be entitled to compensation for inverse condemnation on the theory that the abatement order has resulted in a taking is an issue that was addressed in *West Washington* and in *Golden Gate*.[1] In *Golden Gate*, a property owner purchased a five-acre island in an area of Contra Costa County that had been designated as "open space" in the county's general plan. (*Golden Gate, supra*, 165 Cal.App.4th at p. 253.) Without obtaining any land use or related permits, the owner

---

[1] We requested supplemental briefing by the parties as to whether the second amended complaint alleged facts sufficient to support the conclusion that the City's actions resulted in a taking in light of the courts' holdings in *West Washington* and *Golden Gate*.

9

built several cabins, decks, docks, and related structures. (*Id.* at p. 254.) The county issued an order to abate a public nuisance by demolishing and removing all structures from the island, the owner appealed the order with the county board of supervisors, and the board affirmed the order. The owner then petitioned the superior court for an administrative writ of mandate seeking to set aside the order. At the same time, the owner filed a complaint for inverse condemnation and violation of civil rights, among other claims. (*Id.* at pp. 254-255.)

The court in *Golden Gate* held that the county was not equitably estopped from enforcing the abatement order, noting that the county had never sanctioned the development by issuing a land use permit to the owner and that the owner could not claim its development was allowed by the county's land use requirements. (*Golden Gate, supra*, 165 Cal.App.4th at p. 256.) The court also affirmed the order sustaining the county's demurrer to the owner's inverse condemnation claim, reasoning as follows:

> "The Club contends that even if the abatement order is affirmed, it may still be entitled to compensation on its claim for inverse condemnation on the theory the order has resulted in a taking. The flaw in this argument is that the complaint did not allege facts sufficient to support the conclusion abatement would result in a taking. "'Regulations regarding and restrictions upon the use of property in an exercise of the police power for an authorized purpose, do not constitute the taking of property without compensation or give rise to constitutional cause for complaint.'" [Citation.] . . . [¶] The rule, albeit typically announced in a somewhat different context, is that for a taking to occur, there must be an invasion or an appropriation of some valuable property right which the landowner possesses. [Citation.] The Club never had a property right to develop Golden Isle in violation of the County's land use requirements. . . ."

(*Golden Gate, supra*, at p. 267.)


The rule articulated in *Golden Gate* was applied by Division Seven of this court in *West Washington*. In that case, the purchaser of a building with an 8,000 square foot advertising "wallscape" filed a petition for administrative mandamus and a complaint for inverse condemnation seeking to prevent removal of the wallscape pursuant to a state

10

abatement order, or alternatively, to obtain compensation for its removal. The court in *West Washington* affirmed the order sustaining the state's demurrer to the inverse condemnation claim without leave to amend, citing *Golden Gate* as authority for its conclusion that no taking had occurred. (*West Washington, supra*, 210 Cal.App.4th at pp. 1150-1151.) The court ruled that the state's enforcement action "was an exercise of police power for an authorized purpose and did not constitute a taking." (*Id.* at p. 1151.)

The bright line rule articulated in *Golden Gate* and applied by the court in *West Washington* is a sound one. Absent such a rule, every mandamus proceeding involving the enforcement of zoning laws would be subject to constitutional scrutiny.

Plaintiffs argue that *Golden Gate* and *West Washington* are distinguishable from the instant case because the governmental entities exercising their police powers in those cases had not issued a land use permit or otherwise sanctioned the property owner's conduct. They cite the *Golden Gate* court's observation that the landowner in that case "does not and cannot claim its development was allowed by the County's land use requirements at the time it purchased Golden Isle . . . or that the County ever sanctioned its development by means of granting a land use permit or its equivalent." (*Golden Gate, supra*, 165 Cal.App.4th at p. 256.) Plaintiffs also cite the court's statement in *West Washington* that the property owner in that case could not "claim it relied on any affirmative actions on the part of Caltrans that negated its right to receive compensation it would otherwise be owed." (*West Washington, supra*, 210 Cal.App.4th at p. 1152.) The language cited by plaintiffs, taken out of the context in which the courts in *Golden Gate* and *West Washington* intended, does not support plaintiffs' position.

The *Golden Gate* court's observation that the landowner in that case could not claim that the county had sanctioned the development by granting a land use permit was made in the context of assessing the landowner's claim for equitable estoppel and not the inverse condemnation claim. (*Golden Gate, supra*, 165 Cal.App.4th at pp. 256-260.) Moreover, that observation was made in order to contrast the landowner's situation in *Golden Gate* with "numerous" other cases in which courts "refused to apply the

11

[equitable estoppel] doctrine against a governmental entity despite substantial and reasonable reliance by the landowner on some act or dereliction of the public entity." (*Id.* at p. 260; see, e.g., *Pettitt, supra*, 34 Cal.App.3d 813 [city not estopped from denying validity of building permit issued in violation of zoning ordinance, despite landowner's expenditure of substantial sums to remodel a building in reliance on the permit]; *Smith v. County of Santa Barbara* (1992) 7 Cal.App.4th 770 [equitable estoppel not available to landowner that expended substantial sums in reliance on a permit that did not conform to land use requirements].)  Plaintiffs' equitable estoppel claim was adjudicated in *Horwitz I* and is not at issue and cannot be revisited in this case.  The *Golden Gate* court's observations concerning the absence of a land use permit, made in the context of adjudicating the landowner's equitable estoppel claim, is not a valid basis for distinguishing its inverse condemnation ruling.

Similarly, the court's statement in *West Washington* that the property owner in that case had never attempted to seek a permit and could not claim to have relied on any affirmative actions by Caltrans must be considered in the context in which the statement was made.  That context was a comparison of the property owner's circumstances in *West Washington* with those presented in *People ex rel. Dept. of Pub. Works v. Ryan Outdoor Advertising, Inc.* (1974) 39 Cal.App.3d 804 (*Ryan*).

In *Ryan*, a billboard owner moved its billboards at the direction of the Department of Public Works for a highway widening project.  The department then issued permits for the billboards in their new location, but later determined that the signs violated the Outdoor Advertising Act.  Had the signs remained in their original location, the department would have been required by statute to pay just compensation for their removal.  The court in *Ryan* noted that "the Department ordered Ryan to clear the right-of-way, and in reliance thereon, Ryan removed the billboards and placed them outside the right-of-way line. . . .  [T]he fact that the movement of the billboards was an involuntary displacement resulting from the Department's road-widening activities may be sufficient to justify the application of the doctrine of equitable estoppel." (*Ryan, supra*, 39

12

Cal.App.3d at p. 814.) The court in *Ryan* ultimately declined to apply equitable estoppel to prevent removal of the unlawful billboards because it would nullify an important public policy. The *Ryan* court observed, however, that it would not violate a strong public policy to require the department to pay just compensation upon removal of the billboards. (*Id.* at p. 813.) After noting that the *Ryan* court's statements regarding inverse condemnation were dicta because no inverse condemnation issue had been presented in that case, the court in *West Washington* then proceeded to distinguish *Ryan.* The *West Washington* court noted that the signs at issue in *Ryan* had initially been in compliance with state laws and only became unlawful following their relocation at the department's request, and that the facts before it were "markedly different." (*West Washington, supra*, 210 Cal.App.4th at p. 1152.)

The instant case is also markedly different from *Ryan*. It was plaintiffs' erroneous calculation of the setback, and not any affirmative action by the City, that resulted in the issuance of the nonconforming building permits. (*Horwitz I, supra*, 124 Cal.App.4th at pp. 1347, 1355 & fn. 5.) Plaintiffs' renovated home was never in compliance with the applicable setback requirements. Under these circumstances, there is no strong public policy to provide compensation to plaintiffs for the cost of bringing their nonconforming home into compliance with the zoning code.

Plaintiffs did not allege facts sufficient to establish that the City's revocation of the improperly issued building permits constituted a taking. Their causes of action for inverse condemnation and inverse condemnation by judicial action fail for this reason, and the trial court did not err by sustaining the demurrer as to these causes of action.

## III. Civil rights claim

Plaintiffs concede that in order to state a section 1983 cause of action premised on a violation of procedural or substantive due process, they must allege a protected, or vested property right. (*Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1180, 1183-1184.) Plaintiffs cannot allege a vested property right in the revoked building permits or in the nonconforming home built pursuant to those permits. They are

13

precluded from doing so by the court's conclusion in *Horwitz I* that the building permits issued were invalid and the home built pursuant to those permits was in violation of the City's zoning ordinance. (*Pettitt, supra*, 34 Cal.App.3d at p. 824 [no vested right in building permit invalid at issuance because it was in violation of existing zoning law]; *Millbrae, supra*, 262 Cal.App.2d at p. 246 [no vested property right in permit which was invalid when issued because it violated the zoning ordinance]; *Golden Gate, supra*, 165 Cal.App.4th at p. 267 [no property right to develop land in violation of county land use requirements].) The trial court did not err by sustaining the demurrer to plaintiffs' section 1983 cause of action.

## IV. Denial of leave to amend

Plaintiffs fail to suggest how they would amend their second amended complaint to correct the defects noted above. The burden of proving a reasonable possibility of amending the complaint to state a cause of action "is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The trial court therefore did not abuse its discretion by sustaining the demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed. The City is awarded its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST

14