Filed 3/20/13  Yosemite Title v. County of Tuolumne CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| YOSEMITE TITLE, INC., as Trustee, etc., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> COUNTY OF TUOLUMNE, <br><br> Defendant and Respondent. | F063949 <br><br> (Super. Ct. No. CV55695) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Dambacher, Trujillo & Wright, Gary P. Dambacher, Timothy T. Trujillo, Joseph L. Wright and Brandon M. Kilian for Plaintiffs and Appellants.

Anwyl Scoffield & Stepp, James. T. Anwyl and Lynn A. Garcia for Defendant and Respondent.

-ooOoo-

Here, a local government mistakenly issued building permits in violation of its own ordinance, realized its error and subsequently revoked the permits, but not before the individuals obtaining the permits had relied to their detriment. May those individuals pursue a damage remedy against the local government under a promissory estoppel cause of action? Under the circumstances presented in this case, we hold the answer is no.

Yosemite Title, Inc., as trustee of the Lake Don Pedro Revocable Trust, and Seven Legends Ranches, LLC (plaintiffs), applied to defendant Tuolumne County (County) for building permits to erect a gate across the road at the entrance to a housing development. The County initially granted the permits and, in reliance thereon, plaintiffs installed the gate and related infrastructure at considerable expense. Afterwards, the County revoked the permits because the gate was in violation of a County ordinance that prohibited the blocking of easements and rights-of-way. The parties discussed a possible agreement to allow the gate to remain despite the violation, but that option was apparently foreclosed by a subsequent Court of Appeal decision. Ultimately, the County notified plaintiffs that the gate would have to be taken down. When plaintiffs failed to do so, the County had the gate removed. Plaintiffs then sued the County under various legal theories. After several rounds of demurrers and opportunities to amend, plaintiffs' case ultimately came down to whether the trial court would grant plaintiffs' motion to amend their complaint to allege a cause of action for promissory estoppel. The trial court denied leave to amend on the ground that the proposed new theory of liability (promissory estoppel) was not fairly reflected in plaintiffs' government claim.[1] A judgment of dismissal followed. Plaintiffs appeal from that judgment, contending that the trial court abused its discretion

---

[1] We refer to the claim as a government claim, rather than the usual term "tort claim" to avoid confusion. In *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 741, the Supreme Court noted that it was preferable to refer to the statute governing claims against public entities as the "'Government Claims Act,'" rather than the "'Tort Claims Act'" because the statute was intended to include contract claims.

when it denied their motion for leave to amend.  We reject plaintiffs' contention because, under the facts of this case, plaintiffs had no viable cause of action against the County for promissory estoppel.  Accordingly, the trial court properly denied leave to amend and we affirm the judgment below.

### FACTS AND PROCEDURAL HISTORY

Plaintiffs were the developers and one time owners of real property located in Tuolumne County and commonly known as Seven Legends Ranches (the development or the subdivision).  On July 9, 2003, the County issued to plaintiffs a building permit to construct a gate and façade entrance to the development at Road J-59.  On April 20, 2004, the County issued to plaintiffs a second building permit for the electrical installation related to said gate entrance at Road J-59.  After the permits were issued by the County, plaintiffs expended significant sums of money in reliance on the permits to build the subject gate and façade and to install the necessary electrical infrastructure for the gate.

On September 7, 2004, the County revoked both of the permits it had issued to plaintiffs.  The explanation given by the County was that the subject permits were issued in error because the gate violated Tuolumne County Ordinance Code section 17.56.110, which section prohibited the obstruction of easements and rights-of-way.  After the County revoked the permits, it continued to work with plaintiffs in an effort to reach a "development agreement" to possibly allow the gate to remain.  However, the County believed that option was no longer available after a Court of Appeal decision indicated that such development agreements could not be used to allow projects to circumvent existing laws and ordinances.[2]  On April 1, 2009, the County issued a notice entitled "'Opportunity to Correct,'" which required the removal of the gate by April 20, 2009.

---

[2]     Plaintiffs' complaint identifies that Court of Appeal case as *Neighbors in Support of Appropriate Land Use v. County of Tuolumne* (2007) 157 Cal.App.4th 997.

3.

According to plaintiffs, the Opportunity to Correct was served on the successor owners of the parcels on which the gate was situated, but not on plaintiffs directly. In any event, neither plaintiffs nor any others who were actually aware of the County's notice did anything to comply with it. On October 2, 2009, the County had the gate removed.[3]

Plaintiffs presented two government claims to the County. The first claim was filed by plaintiffs on April 10, 2009, and raised issues concerning the County's Opportunity to Correct notice. The County rejected that claim on May 22, 2009. The second government claim, referred to by plaintiffs as "AMENDED CLAIM AGAINST PUBLIC ENTITY," was filed by plaintiffs with the County on October 6, 2009, and addressed issues and claims arising from the removal of the gate(s) (amended government claim).

Plaintiffs' amended government claim stated, among other things, as follows: "From July 9, 2003, the date the first building permit was issued, to September 7, 2004, when both permits were revoked, [plaintiffs] expended significant sums of money building the subject gate and installing electrical in reliance upon the building permits issued by [the County]. As such, [plaintiffs] seek a judicial determination as to the existence of a vested right pursuant to the issuance of the subject building permits and [plaintiffs'] reliance thereon, and in the alternative for damages based upon [plaintiffs'] justifiable reliance on the subject permits." The amended government claim stated further: "[A]t all times mention[ed] herein there was in place a mandatory rule that prohibited the obstruction of an easement or right-of-way for the purpose it was created. (See Tuolumne [County Ordinance] Code Section 17.56.110). Thus, [plaintiffs] will also seek damages in tort based upon [the County's] breach of a mandatory duty in the

---

**3** According to the County, plaintiffs sold the parcels on which the gates sat in 2004 and 2005.

4.

issuance of the subject permits for the purpose of blocking [an] easement or right-of-way."

On November 20, 2009, the County rejected plaintiffs' amended government claim. The rejection letter included the following statement: "Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim. See Government Code Section 945.6."[4]

On May 20, 2010, within the six-month period, plaintiff Seven Legends Ranches, LLC, filed a complaint against the County. The complaint alleged the same core facts that were presented in the amended government claim and then set forth the headings of several causes of action. The purported causes of action included writ of mandate, violation of mandatory duty, and violation of civil rights.

On November 1, 2010, plaintiffs filed their first amended complaint (FAC) against the County. The FAC added plaintiff Yosemite Title, Inc., as trustee of the Lake Don Pedro Revocable Trust, and withdrew the two causes of action for writ of mandate. The FAC alleged as a first cause of action several discrete claims for violation of mandatory duty under section 815.6, broken down into three counts. Count I was predicated on the County's alleged violation of Tuolumne County Ordinance Code section 17.56.110. It asserted that Tuolumne County Ordinance Code section 17.56.110 "imposed a mandatory duty on [the County] to deny the applications for the above-referenced permits because the permitted gate would necessarily block a County easement." Allegedly, "If [the County] had carried out [its] responsibility to deny the application for the construction of the subject gate and façade across the alleged public easement, plaintiff[s] would not have expended money to construct the gate and would not have marketed and sold

---

[4] Unless otherwise indicated, all further statutory references are to the Government Code.

5.

properties therein as a 'gated community.'" Counts II and III of plaintiffs' first cause of action, for violation of a mandatory duty under section 815.6, were largely predicated on the County's alleged failure to comply with procedural requirements involving summary abatement. These procedural requirements were set forth in other provisions of Tuolumne County Ordinance Code, including sections 1.10.150 and 1.10.250 thereof. In addition, the FAC included a second cause of action, for declaratory relief, which asserted that a controversy existed between plaintiffs and the County "concerning their respective rights and duties with respect to issuance by [the County], and the reliance thereon by plaintiff[s] in the above-referenced building permits." Accordingly, plaintiffs sought "a judicial determination of the respective rights and duties of plaintiff[s] and [the County] concerning reliance upon the above-referenced building permits."

The County generally demurred to the FAC. The trial court sustained the general demurrers to counts I and II of the first cause of action without leave to amend. It sustained the general demurrer to count III of the first cause of action with leave to amend. As to the second cause of action for declaratory relief, the trial court sustained the general demurrer without leave to amend.

On February 28, 2011, plaintiffs filed their second amended complaint (SAC). As permitted in the trial court's order sustaining the demurrer to the FAC, the SAC amended the alleged cause of action for breach of mandatory duty under section 815.6 that had been premised on Tuolumne County Ordinance Code section 1.10.250. However, the SAC *also* added two new causes of action without prior leave of the trial court: (1) a new first cause of action for breach of contract/promissory estoppel and (2) a new third cause of action for violation of title 42 of United States Code section 1983, premised on violation of rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure.

The County generally demurred to the SAC and moved to strike the two new causes of action that were included therein without leave of the trial court. As to the

6.

cause of action for breach of mandatory duty premised on Tuolumne County Ordinance Code section 1.10.250, the trial court sustained without leave to amend the County's general demurrer because that ordinance pertained only to fee owners of the land and, therefore, plaintiffs (who merely had easement rights) did not have standing to assert that code provision. The unauthorized new causes of action (labeled as the first and third causes of action) were stricken by the trial court from the SAC. Concerning said new causes of action, plaintiffs were given 30 days "to file and serve an appropriate motion for leave to amend the Second Amended Complaint."

On July 14, 2011, plaintiffs filed their motion for leave to amend. Plaintiffs' motion sought permission to plead a single cause of action against the County for "[p]romissory [e]stoppel." According to plaintiffs' proposed third amended complaint (attached to the motion), the County's issuance of the two building permits constituted a promise that plaintiffs could build a gate and façade across the entrance to the development, and plaintiffs relied on that promise to their detriment by completing the construction of the gate and façade. The County allegedly breached the promise when it removed the gate on October 2, 2009, causing damages based on the cost of building the gate and façade and electrical infrastructure related thereto, as well as lost sales because the development could no longer be marketed as a "gated" community.

The County opposed the motion to amend. The County argued that plaintiffs' motion failed to present any explanation for waiting 14 months from the filing of the initial complaint to request the addition of a cause of action for promissory estoppel. Additionally, the County argued that the promissory estoppel claim was not viable for several other reasons, such as failure to file a timely government claim and failure to state a viable cause of action.

On August 31, 2011, after oral argument, the trial court denied plaintiffs' motion for leave to amend. The trial court's written order explained: "The legal theory advanced in the proposed third amended complaint varies from the legal theories set forth

7.

in the claims filed with [the County] in 2009." The trial court's written order added that it was too late to file another government claim; therefore, the defect could not be cured. Accordingly, the motion was denied. A judgment of dismissal was entered on September 26, 2011, and plaintiffs' appeal followed.

## DISCUSSION

### I.      Standard of Review

A trial court has wide discretion in deciding whether to allow amendment of any pleading, and its ruling in such matters will be upheld unless a clear abuse of discretion is shown. (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175-176.) Although courts are bound to apply a policy of great liberality in permitting amendments to the complaint at any stage of the proceedings, up to and including trial, this policy should be applied only where no prejudice is shown to the adverse party. (*Magpali v. Farmers Group, Inc*. (1996) 48 Cal.App.4th 471, 487.) Appellate courts are less likely to find an abuse of discretion where the proposed amendment is "'offered after long unexplained delay … or where there is a lack of diligence .…'" (*Hulsey v. Koehler* (1990) 218 Cal.App.3d 1150, 1159.) "'The law is well settled that a long deferred presentation of the proposed amendment without a showing of excuse for the delay is itself a significant factor to uphold the trial court's denial of the amendment. [Citation.]' [Citation.]" (*Leader v. Health Industries of America, Inc*. (2001) 89 Cal.App.4th 603, 613.) Nevertheless, the liberal policy of allowing amendment will generally prevail unless the delay in seeking amendment would result in surprise, prejudice or unfairness to the opposing party. (*Magpali v. Farmers Group, Inc*., *supra*, at p. 487; *Higgins v. Del Faro* (1981) 123 Cal.App.3d 558, 564-566; *Melican v. Regents of University of California*, *supra*, at p. 176.)

A trial court undoubtedly has discretion to deny a proposed amendment where it fails to state a valid cause of action. (*California Casualty Gen. Ins. Co. v. Superior Court* (1985) 173 Cal.App.3d 274, 280-281; 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading,

8.

§ 1198, p. 630.) Such a denial is most appropriate where the pleading is deficient as a matter of law and the insufficiency could not be cured by further amendment. (*California Casualty Gen. Ins. Co. v. Superior Court*, *supra*, at pp. 280-281.)

## II. Motion to Amend Was Properly Denied

Here, the trial court denied the motion to amend on the ground that the legal theory of promissory estoppel was not fairly reflected in plaintiffs' government claim filed with the County. We begin with that issue—namely, whether the proposed amendment was impermissible because it was not fairly reflected in Plaintiffs' prior government claim. After addressing that issue, we shall then consider other factors bearing on the question of whether the trial court's order denying leave to amend was an abuse of discretion.

### A. Proposed Amendment Adequately Reflected in Government Claim

No suits for money or damages against public entities may be brought unless a timely written claim is presented to the public entity and is either acted upon or deemed rejected. (§ 945.4.) Under section 910, the claim must state, among other things, the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and provide "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." (§ 910, subds. (c) & (d).)

As our Supreme Court has explained: "The purpose of these statutes is 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation.' [Citation.] *Consequently, a claim need not contain the detail and specificity required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.'* [Citations.] As the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions [citation], the claims statute 'should not be applied to snare the unwary where its purpose has been satisfied.'

9.

[Citation.]" (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 446 (*Stockett*), italics added.)

"If the claim is rejected and the plaintiff ultimately files a complaint against the public entity, the facts underlying each cause of action in the complaint must have been fairly reflected in a timely claim. [Citation.] '[E]ven if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim.' [Citation.]" (*Stockett*, *supra*, 34 Cal.4th at p. 447, citing *Nelson v. State of California* (1982) 139 Cal.App.3d 72, 79; see also *Fall River Joint Unified School Dist. v. Superior Court* (1988) 206 Cal.App.3d 431, 434.)

Where the complaint and the claim are "'predicated on the same fundamental facts,'" the demurrer on this ground will be overruled. (*Dixon v. City of Livermore* (2005) 127 Cal.App.4th 32, 40.) As explained further in *Stockett*, *supra*, 34 Cal.4th at page 447: "A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an 'entirely different set of facts.' [Citation.] Only where there has been a 'complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim' have courts generally found the complaint barred. [Citation.] Where the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint. [Citation.]" Moreover, as long as the policies of the claims statutes are effectuated, the statutes are given a liberal construction to permit full adjudication on the merits." (*Id*. at p. 449.) Thus, "[i]f the claim gives adequate information for the public entity to investigate, additional detail and elaboration in the complaint is permitted." (*Ibid*.)

Applying these principles to the case before us, we conclude that plaintiffs' proposed amendment to plead a promissory estoppel cause of action was not an

10.

impermissible departure from the fundamental facts set forth in plaintiffs' amended government claim. The amended government claim plainly asserted that plaintiffs had detrimentally relied on the County's issuance of the building permits and, in particular, that plaintiffs incurred substantial expenses in reliance on the permits, such as for the cost of constructing the gate and electrical infrastructure. Based on these facts, the amended government claim further stated that plaintiffs had acquired a "vested right."[5] Plaintiffs' proposed promissory estoppel cause of action, although presenting a distinct *legal theory*, was not based on different facts, conduct or events than were set forth in the amended government claim.[6] Rather, the claim and the proposed amended pleading were "predicated on the same fundamental actions or failures to act by the defendant[]" (*Stockett*, *supra*, 34 Cal.4th at p. 447)—that is, the County's issuance of the building permits, plaintiffs' reliance thereon, and the County's later revocation of the same permits based on a violation of an ordinance. We conclude the trial court erred when it held that the proposed cause of action was not fairly reflected in the amended government claim.

---

[5] We note plaintiffs' amended government claim set forth facts that inherently reflected a potential claim based on principles of estoppel (see, e.g., *Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 321-322 (*Toigo*); *Anderson v. City of La Mesa* (1981) 118 Cal.App.3d 657, 660), which was analogous to that of promissory estoppel (see discussion herein of elements of that cause of action).

[6] One legal treatise accurately summarized the *Stockett* case as follows: "[T]he claimant is not barred from asserting additional *legal theories* or further details to the facts alleged in the claim, as long as the complaint is predicated on the same fundamental actions or failures to act by the persons and at the times specified in the claim. [Citation.]" (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2012) ¶ 1:702, p. 1-156.5.)

11.

B.    Delay or Untimeliness

Although the reason given by the trial court was mistaken, we next consider whether the trial court's denial of leave to amend was nevertheless correct on other grounds.  In this part, we address the County's several arguments that the motion to amend was properly denied due to delay and/or failure to meet statutory deadlines.  We find the County's arguments on each of these points unavailing, as explained below.

First, the County argues that the unexplained 14-month delay between the original complaint and the filing of the motion to amend was sufficient, by itself, to justify the trial court's denial of the motion to amend.  We disagree.  While there may be unusual cases where delay, under the particular circumstances of the litigation, provides an adequate basis for denial of leave to amend, ordinarily there must be, along with the delay, some showing of *prejudice*.  Without such prejudice, the liberal policy of allowing amendment will generally prevail.  (*Magpali v. Farmers Group, Inc.*, *supra*, 48 Cal.App.4th at p. 487; *Higgins v. Del Faro*, *supra*, 123 Cal.App.3d at pp. 564-566; *Melican v. Regents of University of California*, *supra*, 151 Cal.App.4th at p. 176.)  Here, we discern no such prejudice or surprise.  Indeed, although the promissory estoppel theory was not identified, the essential facts giving rise to that cause of action were set forth in plaintiffs' amended government claim as well as in the several versions of their complaint.

Second, the County contends that the promissory estoppel cause of action in the proposed third amended complaint would not relate back to the filing of the original complaint and, therefore, it allegedly was untimely filed under Government Code deadlines (i.e., § 945.6, subd. (a)(1)) or under other statute of limitations.  We disagree.  Relation back is available where the amended complaint (1) rests on the same general set of facts, (2) involves the same injury, and (3) refers to the same instrumentality as the original one.  (*Norgart v. Upjohn Co*. (1999) 21 Cal.4th 383, 408-409.)  Moreover, "[a]n amended complaint relates back to an earlier complaint if it is based on the same general

12.

set of facts, even if the plaintiff alleges a different legal theory or new cause of action." (*Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 277 (*Pointe San Diego*); see also *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1199-1200 ["amendments alleging a new theory of liability against the defendant have been found to relate back to the original complaint, so long as the new cause of action is based on the same set of facts previously alleged"].) "In determining whether the amended complaint alleges facts that are sufficiently similar to those alleged in the original complaint, the critical inquiry is whether the defendant had adequate notice of the claim based on the original pleading." (*Pointe San Diego*, *supra*, at p. 277.) Here, as we have already observed, the core facts constituting the basis for the promissory estoppel cause of action—*namely*, the issuance of the building permits, plaintiffs' detrimental reliance thereon in undertaking the expense to construct the gate, facade and infrastructure, and the County's subsequent revocation of the permits and removal of the gate—were adequately alleged in the original pleading. Since the same general set of facts were alleged, and the same injury-causing events, we conclude the relation-back doctrine applied here.

Third, the County argues that plaintiffs' government claims and lawsuit were untimely filed because a cause of action for promissory estoppel would have accrued long ago, at the time the permits were first revoked (in 2004), not when the County gave its Opportunity to Correct notice and removed the gates (in 2009). We note that a challenge to a pleading based on the statute of limitations will not be sustained unless it affirmatively and necessarily appears from the pleading that the statute must have expired. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 [demurrer based on statute of limitations will not lie if complaint merely *may* be barred; it must be *necessarily* barred].) Since promissory estoppel is akin to a breach of contract claim (*US Ecology v. State of California* (2005) 129 Cal.App.4th 887, 902-905), its accrual would apparently commence when the *breach*

13.

occurred—as that is the general rule for accrual of causes of action sounding in contract. (See *Reichert v. General Ins. Co*. (1968) 68 Cal.2d 822, 831; 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 520, p. 664.)[7] Here, as long as the County continued to allow the gate to remain in place, the essential promise or representation that the permits allegedly embraced (i.e., permission to build a gated entrance to the development) arguably was not yet materially breached. Moreover, plaintiffs alleged that the County had been in discussions or negotiations with plaintiffs about whether the gate could potentially remain. Under these allegations, we are unable to conclude that, as a matter of law, the cause of action accrued at the time the permits were first revoked.

Fourth and finally, the County argues that because the original complaint was not filed within six months after the County's notice of rejection of plaintiffs' first government claim, plaintiffs entire action is time-barred under section 945.6, subdivision (a)(1). This argument also fails since the facts pled do not establish that the lawsuit was necessarily time-barred. Before expiration of the original six-month period, plaintiffs filed their amended government claim with the County. The County's response to said amended government claim was to serve a second notice of rejection, but that second notice of rejection *also* represented to plaintiffs that they would have six months after *that* notice to file a lawsuit premised on the matters set forth in the amended government claim. Plaintiffs alleged that they relied on the representation set forth in the second notice of rejection. Under nearly identical facts, it has been held by this court that if reasonable reliance on a representation in a second notice of rejection (that a party has six months *thereafter* to file a lawsuit) is proven, the County may be equitably estopped from asserting the deadline under the first notice. (*Sofranek v. County of Merced* (2007)

---

**7**     The law is clear that the "statute of limitations to be applied is determined by the nature of the right sued upon, not by the form of the action or the relief demanded. [Citations.]" (*Day v. Greene* (1963) 59 Cal.2d 404, 411.)

14.

146 Cal.App.4th 1238, 1251-1252.)  Therefore, in the present case, the County has not established that the claims are necessarily time-barred.

C.      Failure to State a Cause of Action

We next consider whether the trial court's denial of plaintiffs' motion for leave to amend may be upheld based on failure to state a cause of action.  Specifically, we consider if the proposed amendment was insufficient to state a valid cause of action for promissory estoppel and the defect was such that it could not be cured by further amendment.  We conclude that was the case here, as we now explain.

1.      *Overview of Promissory Estoppel*

We begin by briefly summarizing the law of promissory estoppel, including its availability where the defendant is a government entity.

"In California, under the doctrine of promissory estoppel, 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.  The remedy granted for breach may be limited as justice requires.'  [Citations.]  Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.'  [Citation.]" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310 (*Kajima*).)  "The elements of promissory estoppel are (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages 'measured by the extent of the obligation assumed and not performed.'  [Citation.]" (*Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 692; see also *Cooper v. State Farm Mutual Automobile Ins. Assn.* (2009) 177 Cal.App.4th 876, 892, fn. 3 [stating elements of promissory estoppel claim].)

"[A]n estoppel will not be applied against the government if to do so would effectively nullify 'a strong rule of policy, adopted for the benefit of the public .…'"

15.

(*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 493 (*Mansell*); see also *Poway Royal Mobilehome Owners Assn. v. City of Poway* (2007) 149 Cal.App.4th 1460, 1471 (*Poway*); *Kajima*, *supra*, 23 Cal.4th at p. 316.) "'The courts of this state have been careful to apply the rules of estoppel against a public agency only in those special cases where the interests of justice clearly require it.'" (*Mansell*, *supra*, at p. 495, fn. 30.) The "'facts upon which such an estoppel must rest go beyond the ordinary principles of estoppel and each case must be examined carefully and rigidly to be sure that a precedent is not established through which, by favoritism or otherwise, the public interest may be mulcted or public policy defeated.'" (*Ibid.*) A government entity may be estopped where "the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*Id.* at pp. 496-497; see also *Anderson v. City of La Mesa*, *supra*, 118 Cal.App.3d at p. 661.)

These limiting principles regarding claims of equitable estoppel against a government entity are likewise applicable to promissory estoppel. Hence, promissory estoppel may not be invoked against a government body where it would operate to defeat the effective operation of a policy adopted to protect the public. (*Kajima*, *supra*, 23 Cal.4th at p. 316; *US Ecology, Inc. v. State of California* (2001) 92 Cal.App.4th 113, 135.) Because of this concern, it has been stated that "exceptional circumstances" must be present to justify the application of promissory estoppel against a government entity. (*Poway*, *supra*, 149 Cal.App.4th at p. 1471.)[8] Nevertheless, "where justice and right require it[,] promissory estoppel may be invoked against a governmental body where it would not operate to defeat any strong public policy or result in the indirect enforcement

---

[8]     In *Poway*, for example, the Court of Appeal stated that promissory estoppel "may not be raised against a public entity when it would defeat the public policy of requiring adherence to statutory procedures for entering into contracts." (*Poway*, *supra*, 149 Cal.App.4th at p. 1476.)

of an illegal contract." (*Hilltop Properties, Inc. v. State of California* (1965) 233 Cal.App.2d 349, 364-365.)**9**

In *Kajima*, promissory estoppel was applied against a government entity where the application of that doctrine would further public policies and prevent injustice. (*Kajima*, *supra*, 23 Cal.4th at p. 315 [noting that allowing promissory estoppel remedy in that case would do "rough justice" and "further certain public policies" regarding public contract bids].) In that case, a contractor was the low bidder on a project but the city wrongfully failed to award it the contract, as required by statute. (*Id*. at pp. 309-310.) The Supreme Court held that although the contractor could not state a breach of contract action against the city, the contractor was entitled to recover its bid preparation costs under a promissory estoppel theory. (*Id*. at pp. 313-321.) The court observed that the city represented it would award the contract to the lowest responsible bidder, the contractor relied on that representation, and the city thereafter violated its promise. A promissory estoppel remedy limited to recovery of bid preparation costs was appropriate under the circumstances because it would prevent injustice and further the public policy goals of deterring government misconduct in the bidding process and encouraging contractors to participate. (*Id*. at pp. 315-316.) The court noted it was necessary to limit the recoverable damages to bid preparation costs—rather than allowing recovery of lost profits—because the public policy of keeping the taxpayers' costs low in public contracts (the very purpose of the low-bid statutes) would be defeated by granting a broad damage remedy. (*Id*. at pp. 316-321.)

---

**9** While promissory estoppel is equitable, it is also treated as closely akin to a *contract*, and it is allowed under the government claim statutes on that latter basis. (*Kajima*, *supra*, 23 Cal.4th at p. 314 [citing § 814]; see also *US Ecology, Inc. v. State of California*, *supra*, 129 Cal.App.4th at pp. 902-905 [explaining "contract" basis of promissory estoppel].)

17.

### 2. *Plaintiffs' Argument That Promissory Estoppel is Applicable*

Plaintiffs argue that promissory estoppel is applicable here based on analogy to cases in which equitable estoppel has been applied to prevent a municipality from revoking a building permit after the owner or developer detrimentally relied thereon.[10] For example, it has been held that "if a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit." (*Avco Community Developers, Inc. v. South Coast Regional Comm.* (1976) 17 Cal.3d 785, 791; accord, *Trans-Oceanic Oil Corp. v. City of Santa Barbara* (1948) 85 Cal.App.2d 776, 784.) Similarly, a developer's right to complete a project as proposed vests when "a valid building permit … has been issued and the developer has performed substantial work and incurred substantial liabilities in good faith reliance on the permit." (*Toigo*, *supra*, 70 Cal.App.4th at p. 321.) In cases involving such vested rights, principles of equitable estoppel are applied in appropriate cases to prevent the government from subsequently revoking the building permit: "The principle of estoppel, when invoked in this context, prohibits a governmental entity from exercising its regulatory power to prohibit a proposed land use when a developer incurs substantial expense in reasonable and good faith reliance on some governmental act or omission so that it would be highly inequitable to deprive the developer of the right to complete the development as proposed." (*Ibid.*) By analogy to the vested rights cases, plaintiffs argue that the County would be estopped from revoking the permits or removing the gates, since plaintiffs detrimentally relied on the building permits by incurring the expense of constructing the gates, facade and electrical infrastructure. Plaintiffs argue further that

---

**10** For an elaboration of the differences between equitable estoppel and promissory estoppel, see *Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 249, footnote 7.

since the gates have been removed, merely preventive or injunctive relief is insufficient; allegedly, a damage remedy (i.e., promissory estoppel) is necessary and just.

The County responds that promissory estoppel does not apply because, among other reasons, the building permits were issued in violation of an existing zoning ordinance that prohibited obstruction of easements and rights-of-way. (See Tuolumne County Ordinance section 17.56.110.) In this regard, the County points us to the case of *Pettitt v. City of Fresno* (1973) 34 Cal.App.3d 813 (*Pettitt*).

In *Pettitt*, a building permit was issued to and relied upon by the plaintiff to construct a beauty salon in a location that was zoned exclusively for single family residences. When the City later revoked the permit because the beauty salon was built contrary to the applicable zoning ordinance, the plaintiff argued that pursuant to principles of equitable estoppel, the City could not revoke the permit. (*Pettitt*, *supra*, 34 Cal.App.3d at pp. 816-818.) On appeal, we considered the question of whether a municipality could be estopped to deny the validity of a building permit issued in violation of a zoning ordinance. We answered that question in the negative, explaining that "the public and community interest in preserving the community patterns established by zoning laws outweigh[ed] the injustice that may be incurred by the individual" who relied upon "an *invalid* permit to build issued in violation of zoning laws." (*Id*. at p. 820.) The principle undergirding our holding was "the thesis that estoppel will not be invoked against a government agency where it would defeat the effective operation of a policy adopted to protect the public." (*Id*. at p. 822.) We explained further: "In the field of zoning laws, we are dealing with a vital public interest—not one that is strictly between the municipality and the individual litigant. All the residents of the community have a protectable property and personal interest in maintaining the character of the area as established by comprehensive and carefully considered zoning plans in order to promote the orderly physical development of the district and the city and to prevent the property of one person from being damaged by the use of neighboring property in a

19.

manner not compatible with the general location of the two parcels. [Citation.] These protectable interests further manifest themselves in the preservation of land values, in esthetic considerations and in the desire to increase safety by lowering traffic volume. To hold that the City can be estopped would not punish the City but it would assuredly injure the area residents, who in no way can be held responsible for the City's mistake. Thus, permitting the violation to continue gives no consideration to the interest of the public in the area nor to the strong public policy in favor of eliminating nonconforming uses and against expansion of such uses. [Citations.]" (*Id*. at pp. 822-823, fn. omitted.) Moreover, in *Pettitt*, we found that the cases applying equitable estoppel based on vested rights were distinguishable because the permits in those cases were valid when issued to the developer or owner. (*Id*. at pp. 823-824.) "It is … a wholly different situation when the permit is *invalid* from the beginning because issued in violation of the zoning law for the area." (*Id*. at p. 824.)[11]

We note that while the principles in *Pettitt* were stated in broad terms, they do not necessarily cover every situation where a building permit was issued in violation of an ordinance. Each case must be considered on its own facts, including the nature of the ordinance and the alleged violation. In *Anderson v. City of La Mesa*, *supra*, 118 Cal.App.3d 657, Anderson was issued a permit by the city to build a house that had a setback of seven feet from the side lot. The city's standard zoning ordinance required a minimum setback of five feet. Later, the city realized that a specific plan ordinance in effect for that area required a 10-foot setback. The trial court found that the city was estopped to deny the building permit because Anderson detrimentally relied in good faith on the permit by constructing the house. On appeal, the city argued the trial court erred

---

[11]     As should be clear, *Pettitt*, *supra*, 34 Cal.App.3d 813, involved equitable estoppel (i.e., whether the city would be estopped to deny revocation of a permit); it did not address the appropriateness of a *damage* remedy based on promissory estoppel.

on the issue of estoppel. The Court of Appeal disagreed, explaining as follows: "The City contends as a matter of law it cannot be estopped to deny a building permit issued in violation of a zoning ordinance. *A government entity may be estopped, however, where, as here, 'the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel.'* [Citation.] Anderson built her house according to the permit the City issued and did not violate the City's standard zoning ordinances. Denying the variance would substantially harm Anderson, costing her more than $ 6,000. The court specifically found Anderson's seven-foot setback created no 'special problem for the area or adjacent landowners.' Moreover, the court found no evidence granting Anderson a variance would 'create any hardship on any other persons.' These findings, coupled with the nature of the zoning violation involved here, a two-and-one-half-foot setback encroachment, serve to distinguish this case from holdings [such as *Pettitt*, *supra*, 34 Cal.App.3d 813,] that estoppel may not be used to justify nonconforming uses, based upon building permits issued in violation of existing zoning ordinances. [Citations.] In the circumstances of this case, the court could properly apply estoppel against the City." (*Id*. at p. 661, italics added.)

Based on the above authorities, we believe two preliminary questions must be answered in order to determine whether the County is correct that plaintiffs' cause of action is barred by the principles enunciated in *Pettitt* and related case law. These questions are: (1) Did the County issue the building permits to plaintiffs (to construct the gate) in violation of Tuolumne County Ordinance section 17.56.110, which violation resulted in the permits being subsequently revoked? and (2) If so, was that ordinance adopted for the protection of the public or did it serve to effectuate a strong public policy, as did the zoning ordinance in *Pettitt*? If we answer both of these questions in the affirmative, then plaintiffs cannot maintain a cause of action for promissory estoppel against the County if doing so would impede the effective operation of the public policy

21.

objectives of that ordinance. (See *Pettitt*, *supra*, 34 Cal.App.3d at pp. 819-824 [see cases digested therein]; *Kajima*, *supra*, 23 Cal.4th at p. 316 [expressing principle that neither equitable nor promissory estoppel may be invoked against a government body where it would operate to impair the effective operation of a policy adopted to protect the public]; *US Ecology, Inc. v. State of California*, *supra*, 92 Cal.App.4th at p. 135 [same rule stated].)

As to the first question, we believe it is beyond dispute that the building permits were issued to plaintiffs in violation of Tuolumne County Ordinance section 17.56.110, which section stated, in pertinent part, as follows: "Except as otherwise provided herein, no person shall place or erect, nor shall any owner of record, or anyone known to be in possession, of a parcel of land fail or refuse to remove from that parcel, any structure or object which obstructs the purpose for which an easement or right-of-way of record was created." Plaintiffs' amended government claim stated that the gate was in violation of said ordinance and plaintiffs even made that violation a premise of their claim that the County was liable. Moreover, plaintiffs' FAC specifically asserted without any qualifying language that "Tuolumne County Ordinance Code [section] 17.56.110 … imposed a mandatory duty on [the County] to deny the applications for the above-referenced permits *because the permitted gate would _necessarily_ block a County easement*." (Italics and underlining added.) Although after the demurrer to this part of the FAC was sustained, plaintiffs did not bother to repeat that language in subsequent versions of the complaint, it is clear that plaintiffs' earlier pleading constituted a judicial admission that the gate was *in fact* obstructing a County easement—hence there *was* a violation. Plaintiffs remain bound by that prior admission. (See 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 454, p. 587.) As stated in *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857 at page 877: "A plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false.

22.

[Citation.]"  (See also *Brown v. City of Fremont* (1977) 75 Cal.App.3d 141, 146 ["'While inconsistent *theories* of recovery are permitted [citation], a pleader cannot blow hot and cold as to the facts positively stated.'"].)

As to the second question, plaintiffs acknowledge that the County's express rationale for enforcing Tuolumne County Ordinance Code section 17.56.110 (by revoking the building permits, etc.) included a concern for public safety and, in particular, a concern that fire vehicles not be impeded from having access to the subdivision in the event of a fast-moving fire.[12]  Clearly, a government entity's interest in protecting residents and their property from fire would constitute an important public policy.  The wording of section 17.56.110 is broad and naturally includes both public and private easements and rights-of-way in its scope.  It is reasonable to assume that one of the purposes of section 17.56.110 would be to facilitate the protection of County or public easements and rights-of-way from being obstructed, and the importance of that purpose would be heightened where public safety is concerned.  That is precisely what enforcement of the ordinance, as applied here, accomplished when the building permits were revoked based on noncompliance with section 17.56.110.  Additionally, not only

---

[12]    In response to our request for supplemental briefing, the parties conceded that fire safety was articulated by the County as an important rationale for its action.  This fire safety concern conspicuously came to light in 2005, a relatively short time after the permit revocation, when the County denied plaintiffs' proposal that the County abandon the public easement as a possible solution to the gate/ordinance violation issue.  We grant plaintiffs' request for judicial notice of the contents of the County's denial letter premised on fire safety concerns, in which the County Fire Marshal's Office stated that "[g]ating of any access increases the fire department's response time to an area prone with fast moving grass/wildland fires," and that "[d]ue to the high fire hazard of this area, a reduction in road easement [access] could potentially have disastrous effects on both the access for emergency personnel and the ability for egress for the property owners in the case of an emergency."  We additionally grant the County's request for judicial notice that much of the Seven Legends Ranches subdivision is in an area designated by government agencies as having a "'high fire hazard.'"

were the building permits issued to plaintiffs in violation of Tuolumne County Ordinance Code section 17.56.110, but said violation and the resulting obstruction of the County's easement or right-of-way affected the interests of *many* people (i.e., the residents of the subdivision), not merely an isolated property owner. In light of the public policy served by the subject ordinance and the potential impact of the violation of that ordinance on public safety in this particular case, we conclude the County was not estopped from taking the action that it did. (See, e.g., *Pettitt*, *supra*, 34 Cal.App.3d at pp. 819-824 [notwithstanding the plaintiff's reliance, the city was not estopped to deny building permit issued in violation of zoning ordinance that was for benefit of entire public]; *Smith v. County of Santa Barbara* (1992) 7 Cal.App.4th 770, 775 [county was not estopped from revoking land use permit for failure to file environmental impact report]; *Chaplis v. County of Monterey* (1979) 97 Cal.App.3d 249, 259 [county was not estopped to deny invalid septic tank permit; there was vital public policy interest in sewage disposal].)

Additionally, we believe that were we to allow a damage remedy in the circumstances of this case, it would tend to discourage municipalities from acting to correct ordinance violations of this nature where public safety concerns are involved. Hence, extension of a promissory estoppel damage remedy would not further but would impede the public policies at stake. (See *Kajima*, *supra*, 23 Cal.4th at p. 315 [promissory estoppel remedy was allowed against public entity to prevent injustice and "further certain public policies" regarding public contract bids].)

For all of these reasons, we conclude that plaintiffs' proposed third amended complaint "does not allege exceptional circumstances necessary to justify application of the promissory estoppel doctrine against the [County], and leave to amend would not cure the defect." (*Poway*, *supra*, 149 Cal.App.4th at p. 1471.) Therefore, the trial court did not abuse its discretion when it denied plaintiffs' motion for leave to amend.

### III. Oral Argument and Final Comments

We briefly note in passing certain unexpected matters that were raised at oral argument, and we explain why they do not affect the disposition of this case.

At oral argument, plaintiffs' counsel suggested that perhaps the County did not have a dedicated public easement after all (where the gate was located), and in support of that proposition, he claimed to hold in his hand a parcel map that purportedly supported his new theory. We disregard this new theory, not only because it constitutes a departure from plaintiffs' own pleadings and theory of the case, but also because we do not address matters that were not adequately raised below or that are raised for the first time in reply briefs or at oral argument. (See, e.g., *Cable Connections, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350-1351, fn. 12 [a party cannot change theory of case on appeal]; *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847 [new theory or argument presented for first time on appeal need not be considered]; *Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3 [points raised for first time in reply brief need not be considered].)

For similar reasons, we do not consider plaintiffs' supposition expressed during oral argument that the County's stated concern about fire safety was not genuine, but was made up without any rational basis for support. Such a particular claim or theory was never alleged in a pleading, was not presented in a timely government claim and was not adequately raised in plaintiffs' opening brief in the present appeal. It also plainly contradicts the matters submitted by both parties for judicial notice relating to the fire safety issue. (See fn. 12, *ante*.) Furthermore, it seems to us that such a direct and specific challenge to the County's position that the gate created a fire safety issue should have been raised with the County at an appropriate administrative hearing at the time plaintiffs first learned of the County's reliance on fire safety concerns in 2005, including any relevant administrative appeals. We have not been apprised of any such proceedings, and surely the time for an appeal of such matters would have long ago expired.

A closing comment is warranted.  Although we have concluded in this opinion that, under all of the circumstances, plaintiffs cannot state a cause of action for promissory estoppel against the County, we note that we have reached that conclusion with some mixed emotions.  A general principle of our jurisprudence is that for every wrong there is a remedy (Civ. Code, § 3523)—but that was not the outcome in this case.  The County made a mistake by improvidently issuing the building permits in violation of its own ordinance, while plaintiffs reasonably and detrimentally relied on the County's action.  In a very real sense then, it was the County's *fault* that the gate and infrastructure were installed at plaintiffs' considerable expense.  Still, in the final analysis, we have found the County to be legally *off the hook* for damages concerning the permit revocation and gate removal because of a strong public policy aspect to its corrective actions.  But that does not mean the County could not have sought out ways to minimize detrimental impacts to plaintiffs, to the extent it was feasible and lawful to do so.  (We are not referring to a mandatory duty; but merely an opportunity.)  That is, it seems to us that the County might have looked for opportunities to legitimately accommodate the interests of both sides in order to ameliorate the unintended detriment to those who relied in good faith on its building permits.  Here, in oral argument, plaintiffs' counsel noted several possible ways to potentially accommodate the County's fire safety interest (e.g., special universal locking boxes and keys, etc.) while also allowing some form of gate to remain in place.  Regrettably, whether or not such ideas would have led to an acceptable solution, it was apparent to this panel that the two sides had never meaningfully discussed such possibilities.

## **DISPOSITION**

The judgment is affirmed.  Each party shall bear its own costs on appeal.

_____

Kane, J.

WE CONCUR:


_____

Cornell, Acting P.J.


_____

Poochigian, J.